Whitaker, Judge,
delivered the opinion of the court:
From March 6, 1945, to May 13, 1949, plaintiff was in the Security Courier Service, Army Postal Service Branch, Adjutant General’s Office of the United States Army. His duties required him to safeguard and convey top secret, secret and confidential matter, between points in the United States and various foreign countries, including Bermuda, Puei'to Bico, the Canal Zone, British Guiana, Newfoundland, Labrador, Greenland, the Azores, France, Germany, and Trieste.
From November 15,1945, to June 27,1946, he was assigned to the State Department as a diplomatic courier, and from June 28, 1946 to August 12, 1946, he was assigned to the Intelligence Division of the Army as a courier. During both of these periods he participated regularly and frequently in aerial flights pursuant to Army Special Orders No. 256, dated October 26,1945. For this period he has been paid extra compensation at the rate of $720 per annum.
From October 8, 1948, to May 13, 1949, when he was released to inactive duty, he participated regularly and frequently in aerial flights pursuant to an order dated October 7, 1948, and for this period he has been paid extra compensation at the rate of $720 per annum. During this time he was the officer-in-charge of this courier service.
He sues for extra compensation at the rate of $720 per annum for the periods March 6, 1945 to October 25, 1945, and January 1, 1947 to October 6, 1948, for which he has not been paid. During the first period he was a courier with the Army Postal Service, and during the latter period he was the officer-in-charge of the courier service.
During the first period he performed 6 flights in April; 18 in July; and 28 in October 1945. In the latter period he *246 performed 6 flights in March 1947; 12 in April; 24 in May; 4 in June; 7 in July; 14 in August; 26 in September; 27 in October; 6 in November; and 9 in December; 18 in January 1948; 15 in February; 18 in March; 14 in April; 5 in May; 5 in June; 11 in July; 2 in August; and 10 in September.
His right to recover depends on these statutes: first, section 18 of the Act of June 16,1942 (56 Stat. 359,368), and, second, the Act of June 28,1944 (58 Stat. 573, 575).
His right to any extra compensation for participating in aerial flights depends upon the first Act. It reads:
Officers, warrant officers, nurses and enlisted men of any of the services mentioned in the title of this Act and members of the Reserve forces of such services, and the National Guard shall receive an increase of 50 per centum of their pay when by orders of competent authority they are required to participate regularly and frequently in aerial flights, and when in consequence of such orders they do participate in regular and frequent flights as defined by such Executive orders as have heretofore been, or may hereafter be, promulgated by the President: * * *.
Except for this Act, no officer was entitled to extra compensation for participating in aerial flights. Under it any officer who did participate in such flights regularly and frequently pursuant to orders of competent authority was entitled to 50 percent extra pay.
But the second Act, which was the Appropriation Act of June 28, 1944 (58 Stat. 573), making appropriations for the military establishment for the fiscal year ending June 30, 1945, placed a limitation on this right to extra pay in the case of nonflying officers. Such a limitation has been contained in subsequent appropriation acts; and prior appropriation acts also contained a limitation on the extra pay of such officers. The Act of June 28,1944, reads in part:
* * * That the appropriations contained in this Act shall not be available for increased pay for making aerial flights by nonflying officers at a rate in excess of $720 per annum, which shall be the legal maximum rate as to such officers, and such nonflying officers shall be entitled to such rate of increase by performing three or more flights within each ninety-day period, pursuant to orders of competent authority, without regard to the duration of *247 such flight or flights: Provided further, That, during the continuance of the present war and for six months after the termination thereof, a flying officer as defined under existing law shall include flight surgeons, and commissioned officers or warrant officers while undergoing flying training: * * *.
The proof leaves no doubt that plaintiff participated in the number of flights specified in the appropriation act. He submitted a written statement showing the number of flights he participated in and he testified that the schedule was correct. This proof was not contradicted.
The Commissioner was in error in excluding this statement. It will be received in evidence.
Plaintiff was a nonflying officer. Plying officers were originally defined as pilots; then this was extended by the Act of July 2, 1926 (44 Stat. 781) to include an observer. It was further extended by the Act of October 4,1940 (54 Stat. 963), to include any other member of a combat crew; and by the Act of July 2,1942 (56 Stat. 611, 612), to include flight surgeons, and officers undergoing flight training. The Act of June 16, 1942, swpra, provided additional pay to officers on parachute duty.
Plaintiff came within none of these classifications. He was not a flying officer; hence, necessarily, he was a nonflying officer. As such he was entitled to extra compensation at the rate of $720 per annum if he performed three or more flights within each 90-day period “pursuant to orders of competent authority.”
He was paid for the flights he made pursuant to orders dated October 26, 1945 and October 7, 1948, but the flights made before the first order and from January 1,1947 to the date of the second order are said to have been made without orders requiring him to do so.
This is the only genuine issue in the case: Did he participate in these flights pursuant to orders of competent authority requiring him to do so?
In the first place, it is conceded that his duties during the periods for which he has not been paid were the same as in the periods for which he has been paid.
All the orders for the first period for which he has not been paid were of the same tenor. They directed plaintiff *248 to. travel by air in the performance of his duties “when certified by the Director, Army Postal Service, as necessary for the accomplishment of an emergency war mission. * * * A high priority is established for any air travel that is necessary owing to the urgency and security of this mission. * * *” Fifty-two flights were made during this period of approximately 8 months. It is fair to assume that they were certified as necessary by the Director, especially considering the urgent nature of plaintiff’s duties.
Typical of the orders for the second period is the following:
1. Under the provisions of paragraph 4b (4), Alt 35-4890, 12 March 1947, the following-named officers, Army Security Courier Office, Security Courier Service Section, Army Postal Service Branch, Office of The Adjutant General, will proceed at such time and such order and frequency as may be required during the period 1 January 1949, to 30 June 1949, inclusive, from Washington, D. C., to New York, New York, Mobile, Alabama, and/or Westover, Massachusetts, thence to Plamilton, Bermuda; Terceira, Azores; Paris, France; Frankfurt, Heidelberg, Bremerhaven, and Berlin, Germany; Trieste; San Juan, Puerto Rico; Panama Canal Zone; Georgetown, British Guiana; Stephenville and St. Johns, Newfoundland; Goose Bay, Labrador; Narsarussuak, Greenland; and such other places outside of the continental limits of the United States as may be necessary on temporary duty in connection with courier activities of the Security Courier Service Section, Army Postal Service Branch, AGO, and upon completion of each tour of temporary duty, return to their proper station, Washington, D. C.
* * * * *
Capt. Albert H. Griffin, 01845893, AGD
* * * * #
2. TDN. 901-1424 P 432-02 A 2190425 S 49-037. Travel by military, naval or commercial aircraft is directed (Par 3b (2) AR 55-120) except where other means of authorized travel are equally or more expeditious and is necessary for the successful accomplishment of an urgent mission directly related to the emergency. Attention is invited to Act of March 4, 1909, (35 Stat. 1107) 18 U. S. C. 195. A high priority is established for any air travel that is necessary owing to the urgency and security of this mission. Whenever commercial air *249 craft transportation is utilized, routing will be used which provides earliest possible arrival at destination, without regard to cost or shortest available air route. Travel by extra fare aircraft is authorized as being necessary due to the emergency of the mission. Travel by any means surface transportation is authorized. * * *
It is evident that plaintiff’s duties required him to deliver the messages entrusted to his care in the shortest possible time; and it is common knowledge that where air transportation is available between two points, it is, in nearly all instances, the most expeditious means of travel. At least it must be assumed that it was the most expeditious means of travel in the instances where plaintiff used it, for speed in transmission was a prime objective of plaintiff’s missions.
We must, therefore, conclude that plaintiff’s orders directed him to travel by air in every instance he used this means of transportation. His orders, properly construed, directed him “to participate regularly and frequently in aerial flights.”
Defendant says an officer must perform some duty in connection with flying before he is entitled to flying pay. This is not true. The very term, nonflying officer, carries a contrary implication. Besides, nurses and flight surgeons, who are expressly included among those entitled to flying pay, perform no duties in connection with flying. They are merely transported from one place on the ground to another, where they discharge the functions of a nurse or a surgeon. It is not a prerequisite to the right to flying pay that a person perform duty in connection with flying.
It must be admitted that it is somewhat incongruous to give to a passenger who is an officer additional compensation when passengers who are civilians are not given it; but so the law reads. This is the policy of Congress, and it is not for us to change it.
We conclude that plaintiff qualifies under the terms of the Acts quoted, supra, and that he is entitled to the extra compensation of a nonflying officer.
Judgment will be entered against defendant and in plaintiff’s favor for the sum of $1,732.
*250 Maddest, Judge; Littleton, Judge; and Jones, (Thief Judge, concur.
Laramore, Judge, took no part in the consideration or decision of this case.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Albert H. Griffin, is a resident of the District of Columbia and a civilian employee of the Federal Government. He served as an enlisted man in the Army from the time of his induction, June 28,1942, until appointed a Second Lieutenant on April 28, 1948. At the time of his honorable release to inactive duty on May 18, 1949, he was serving in the rank of Captain, Adjutant General’s Department, Officers’ Beserve Corps. He is now in the Inactive Eeserve.
2. The plaintiff’s active duty assignments with the Army, during the periods involved in this claim, principally consisted of the following:
(a) Courier Officer, Army Postal Service, Adjutant General’s Department, Washington, D. C., from March 6, 1945, to November 14, 1945.
(b) Assigned to temporary duty as Diplomatic Courier, New York Detachment, State Department, Army Postal Service, LaGuardia Field, New York, and later Washington, D. C., from November 15, 1945, to June-27, 1946.
(c) Assigned to duty as Diplomatic Courier with Intelligence Division, Army Service Forces, Army Courier Service, with temporary duty at the State Department, Washington, D. C., and LaGuardia Field, New York, from June 28,1946, to August 12,1946.
(d) Courier Officer, Security Courier Service, Army Postal Service, Adjutant General’s Office, and later Courier Transfer Officer, Washington, D. C., August 13, 1946, to July 15,1948.
(e) Acting Officer-in-Charge and later Officer-in-Charge of Army Security Courier Office and Army— Air Force Postal Service, Washington, D. C., from July 16, 1948, to May 13, 1949, and assigned to Separation Point, Fort Myer, Virginia, to May 18, 1949.
*251 3. The Army Courier Service was formally activated in 1942 under the Adjutant General for the purpose of the expeditious transmission of top secret, secret, and confidential matter by courier. Officer couriers were used for transmitting classified material marked on the outside envelope or label “Via Officer Courier Only” to destination points within and outside the United States.
4. The plaintiff received increased pay at a rate of $720 per annum for making regular and frequent aerial flights, and more than three in number for each ninety-day period, while assigned to temporary duty as a diplomatic courier on loan to the State Department, during the period from October 26, 1945, to August 12, 1946, pursuant to Army Special Orders No. 256, dated October 26, 1945, which required the plaintiff “to participate regularly and frequently in aerial flights” for the purpose of performing duties as diplomatic courier with the State Department.
5. By order of the Secretary of the Anny, dated October 7, 1948, the plaintiff was “required to participate, regularly and frequently in aerial flights in connection with his present assignment as Security Courier Service Officer, Army Postal Service Branch, AGO, effective 7 October 1948,” and made more than three in number in each ninety-day period, and the plaintiff thereupon received the increased pay for regular and frequent participation in aerial flights as a nonflying officer of the Army, for the period from October 8,1948, to the date of his release to inactive duty.
6. The plaintiff performed the duties of Courier Officer, Army Postal Service, under assignment in the Office of the Adjutant General, War Department, for which period he was not paid any additional pay for aerial flights made by him in connection with the performance of such service, from March 6, 1945, to October 25, 1945, and January 1, 1947, to October 6, 1948, for which he now claims such extra pay. Duties performed by the plaintiff making such flights were of the same character as those for which the plaintiff received extra pay on his own certificate but under appropriate orders requiring him to participate regularly and frequently in aerial flight.
*252 The number of aerial flights made by the plaintiff during the period involved and the months in which made are as follows:
1945: April — 6; July — 18; October — 28.
1947: March — 6; April — 12; May — 24; June — 4; July— 7; August — 14; September — 26; October — 27; November — 6; December — 9.
1948: January — 18; February — 15; March — 18; April — 14; May — 5; June — 5; July — 11; August — 2; September — 10.
The orders for the period from March 6,1945, to October 25, 1945, were of the same general tenor. They directed plaintiff to travel by air in the performance of his duties as a courier “when certified by the Director, Army Postal Service, as necessary for the accomplishment of an emergency war mission. * * * A high priority is established for any air travel that is necessary owing to the urgency and security of this mission. * * *”
Typical of the orders for the second period is the following:
1. Under the provisions of paragraph 4b (4), Alt 35-4890, 12 March 1947, the following-named officers, Army Security Courier Office, Security Courier Service Section, Army Postal Service Branch, Office of The Adjutant General, will proceed at such time and such order and frequency as may be required during the period 1 January 1949 to 30 June 1949, inclusive, from Washington, D. C., to New York, New York, Mobile, Alabama, and/or Westover, Massachusetts, thence to Hamilton, Bermuda; Terceira, Azores; Paris, France; Frankfurt, Heidelberg, Bremerhaven, and Berlin, Germany; Trieste; San Juan, Puerto Rico; Panama Canal Zone; Georgetown, British Guiana; Stephenville and St. Johns, Newfoundland; Goose Bay, Labrador; Nar-sarussuak, Greenland; and such other places outside of the continental limits of the United States as may be necessary on temporary duty in connection with courier activities of the Security Courier Service Section, Army Postal Service Branch, AGO, and upon completion of each tour of temporary duty, return to their proper station, Washington, D. C.
* $ # # $
Capt. Albert H. Griffin, 01845893, AGD
*253 2. TDN. 901-1424 P 432-02 A 2190425 S 49-037. Travel by military, naval or commercial aircraft is directed (Par 3b (2) AE 55-120) except where other means of authorized travel are equally or more expeditious and is necessary for the successful accomplishment of an urgent mission directly related to the emergency. Attention is invited to Act of March 4, 1909 (35 Stat. 1107), 18 U. S. C. 195. A high priority is established for any air travel that is necessary owing to the urgency and security of this mission. Whenever commercial aircraft transportation is utilized, routing will he used which provides earliest possible arrival at destination, without regard to cost or shortest available air route. Travel by extra fare aircraft is authorized as being necessary due to the emergency of the mission. Travel by any means surface transportation is authorized. * * *
7. The plaintiff submitted a claim to the General Accounting Office for additional pay as a nonflying officer, for the periods March 5, 1945, to October 25, 1945 and January 1, 1947, to October 6, 1948, incident to his service as a commissioned officer, which was disallowed by the Comptroller General under date of June 12, 1950. The decision stated in part as follows:
Information furnished by the Department of the Army fails to reveal orders authorizing you to participate regularly or frequently in aerial flights for the period March 5,1945, to October 25, 1945, and January 1,1947, to October 6,1948.
You are further advised that copies of orders submitted by you to substantiate your claim are not orders of competent authority authorizing you to participate regularly or frequently in aerial flights, but are orders authorizing you to perform a specific travel and authorizing the modes of transportation that you could avail yourself.
Accordingly, in the absence of order issued by competent authority, placing you in a nonflying officer status there is no authority for the payment of additional amounts as claimed.
I therefore certify that no balance is found due you from the United States.
8. The flights made by the plaintiff from March 6, 1945, to October 25,1945, and January 1,1947, to October 6,1948, described in finding 6, were performed by him as an essential *254 part of his duties as a courier and pursuant to orders of the Secretary of War, a competent authority. Such, flights numbered three or more in each ninety-day period included in the periods March 6, 1945, to October 25, 1945, and January 1,1947, to October 6, 1948.
Plaintiff is entitled to additional pay for making aerial flights for the period alleged at the. rate of $60 per month in the sum of $1,732.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States one thousand seven hundred thirty-two dollars ($1,732).